COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP417-CR**

Cir. Ct. No.  2016CM73

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ERIC L. VANREMORTEL,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Door County: D. T. EHLERS, Judge.  *Affirmed*.

¶1      SEIDL, J.[1]   Eric Vanremortel appeals a judgment convicting him of disorderly conduct.  Vanremortel argues the circuit court erroneously exercised its

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

discretion in granting the State's motion to admit evidence of three out of four other prior acts at his jury trial. We disagree and affirm the judgment.

## BACKGROUND

¶2      On May 22, 2016, S.Z.[2] and her husband Greg, a retired investigator at the Sturgeon Bay Police Department, were at property they rented in Sturgeon Bay where they took care of a variety of animals. Greg and S.Z. were in separate vehicles and about to leave the rented property for their home when Greg observed Vanremortel driving "really slowly" right to left on the street adjacent to the property. Greg knew Vanremortel because Greg encountered him regularly when he worked at the police department. Because of his prior encounters with Vanremortel, Greg decided to turn right out of the property, when he would normally turn left, to avoid driving in the same direction behind Vanremortel. After Greg turned right, S.Z. turned left because that was the normal direction they took home.

¶3      Greg observed S.Z. turn left, and he called to warn her that Vanremortel was driving the vehicle immediately in front of her and to keep her distance from him. S.Z. had never met Vanremortel, but she knew, based upon what Greg previously had told her, that on May 1, 2016, Vanremortel had purposefully followed Greg to their home.

¶4      Vanremortel and S.Z. eventually stopped at an intersection with a red traffic light. S.Z. stopped "three car lengths" behind Vanremortel. While they

---

[2] Consistent with WIS. STAT. RULE 809.86, we use the victim's initials when referring to her.

were waiting for the light to turn green, Vanremortel exited his vehicle, walked toward S.Z.'s vehicle, and began shouting at her. S.Z. was unsure what Vanremortel was saying while he was shouting at her, but she replied, "[E]xcuse me?" S.Z. testified that she was "terrified" because Vanremortel was "unkept" and "very scary looking," and because Greg had warned her to "stay away from him."

¶5 When the traffic light turned green, Vanremortel returned to his vehicle. He then "floored his vehicle" and "shot across the intersection." Vanremortel turned left, which was the same route S.Z. needed to travel home. After S.Z. turned left through the intersection, she noticed that Vanremortel "had parked his vehicle, got out and … was screaming at [her] as [she] drove by," with his "arms in the air." Vanremortel was subsequently cited for disorderly conduct, as a repeater, for this incident.

¶6 Prior to trial, the State moved to admit four instances of other acts evidence, and the circuit court held an evidentiary hearing on the State's motion. The State sought to introduce witness testimony regarding these prior acts to illustrate Vanremortel's "history of stalking and confronting individuals in an aggressive manner." Vanremortel's trial counsel argued against the admission of only the third act, stating, "[I]t's a little bit tough for me to argue against most of this. The only one I really would have an issue with would be [act three] …." After the parties argued for and against the admission of the third act, the court

declined to admit evidence of it, but, as we explain further below, the court permitted introduction of evidence regarding acts one, two, and four.[3]

¶7 Act one involved Vanremortel's conviction in 2013 for stalking a retired Door County Sheriff's Department investigator while the victim was in his private vehicle. In the early morning, the victim was parked in a parking lot, and the victim's vehicle was parallel to an adjoining alley. The victim saw Vanremortel's vehicle traveling south toward him and park near the alley. Vanremortel then pulled into the alley and stared at the victim for ten to fifteen seconds before accelerating down the alley. One minute later, the victim heard Vanremortel's "engine revving up and revving up, and [Vanremortel] comes backing down the alley real fast, slams on the brakes in the same location and jumps out of his vehicle and starts approaching" the victim. As Vanremortel approached, "he was walking at a fast pace, arms down to his side, fists clenched, [and] staring." The victim exited his vehicle and yelled at Vanremortel, asking him what his problem was. Vanremortel replied something similar to, "Well, you'll see," or "You'll see later," and then turned around, walked back to his vehicle, and left the alley.

¶8 Act "four" involved an incident in 2014 between Vanremortel and a Sturgeon Bay Police Department community service officer (CSO). The CSO was performing a check of a park at 8:45 p.m. He saw a vehicle sitting in the dark with its lights off. The CSO approached the vehicle, shined his vehicle's mounted light onto it, and saw Vanremortel inside. Vanremortel immediately exited his vehicle

---

[3] We refer to the numbering of the individual other acts consistent with how the circuit court and the parties labeled them, although we subsequently describe acts one, two, and four in chronological order.

and approached the CSO, who was still sitting in his vehicle. Because the CSO was concerned that Vanremortel "ha[d] an aggressive demeanor" and was previously warned of Vanremortel's history of officer "run-ins," the CSO decided "to avoid the situation" and leave. After the CSO left the park, he noticed Vanremortel following him "very closely, probably within 10 to 15 feet [behind], constantly flickering his high and low beams" at the CSO.

¶9 When the CSO stopped at an intersection with a red traffic light, Vanremortel stopped, left his vehicle, and approached the CSO's driver's side window. Vanremortel asked the CSO if he "had any problems." When the traffic light turned green, the CSO continued through the intersection, and Vanremortel continued following him. The CSO again stopped at an intersection. This time, Vanremortel pulled into the turn lane next to the CSO. Vanremortel had his window rolled down and "demanded that [the CSO] pull over to the side of the road." The CSO declined, continued through the intersection, and radioed dispatch that he was being followed by Vanremortel.

¶10 A Door County sheriff's deputy responded to dispatch's request to assist the CSO. The deputy observed Vanremortel following the CSO closely and initiated a traffic stop of Vanremortel's vehicle. When the deputy asked Vanremortel why he was following the CSO, Vanremortel replied that "he was trying to find out why the [CSO] had shined a light in his car."

¶11 Act "two" involved an incident between Greg and Vanremortel on May 1, 2016—twenty-one days before Vanremortel's confrontation with S.Z. Greg was leaving the rental property in Sturgeon Bay to drive to his residence. During his drive, Greg noticed a vehicle following him. He thought that the vehicle looked similar to Vanremortel's. Because Greg was concerned that

Vanremortel was following him, Greg took a detour home and turned into a boat landing parking lot, which he knew had video surveillance. The vehicle behind Greg followed him into the parking lot. As Greg made a U-turn to exit the parking lot, he confirmed that it was Vanremortel who was following him. Greg continued to take side streets in a roundabout way home. Vanremortel followed Greg until he was "pretty much home."

¶12    The circuit court admitted acts one, two, and four after considering the test our supreme court announced in *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998).[4]  The court concluded that acts one and four were "incidents that … show not character but a system of criminal activity, an issue that Mr. Vanremortel allegedly has with law enforcement officers."  It further determined that act two was "part of the context of Mr. Vanremortel's alleged criminal behavior in this matter following [Greg]'s wife."  The court also observed that Vanremortel's trial counsel took "the high road" by not arguing against the admission of acts one, two, and four.  Subsequently, a jury convicted Vanremortel of disorderly conduct, and Vanremortel now appeals.

## DISCUSSION

¶13    The State contends that Vanremortel forfeited our review of the circuit court's evidentiary decision because he never objected to the three acts' admission.  The forfeiture rule is one of judicial administration.  *State v.*

---

[4] The circuit court determined act three would not be permitted at Vanremortel's trial, explaining: "[I]t's just too prejudicial.  It's too far-fetched.  It's not following a law enforcement officer.  Yes, it's kind of the same behavior of following somebody and not letting it go allegedly until there is a confrontation, but … because [act three is] not involving a law enforcement officer … three is out."

*Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. We will not blindside the circuit court with reversals based upon a party's arguments not previously raised before the court. *See id.* Whether we apply the forfeiture rule is a decision left to our discretion. *Id.*

¶14 We decline to find that Vanremortel forfeited review of the circuit court's evidentiary decision in this instance. We recognize that Vanremortel's trial counsel provided no argument at the evidentiary hearing against the admission of the three other acts to which Vanremortel now complains. Indeed, on two occasions, Vanremortel's trial counsel stated that it would be hard for him to argue against acts one, two, and four's admissibility. However, the State's forfeiture argument is not developed, as it only cursorily raises the issue in one sentence of its brief. Moreover, we conclude Vanremortel's general opposition to the State's motion at the evidentiary hearing gave the circuit court notice that Vanremortel opposed the other acts' admissions, thereby allowing the court to make some record of its decision in admitting the three other acts. We therefore address the merits of Vanremortel's appeal.

¶15 Vanremortel argues the circuit court erred in granting the State's motion to admit the other acts evidence at his jury trial. Evidence of a defendant's other crimes, wrongs, or acts generally is not admissible to prove his or her character in order to show that he or she acted in conformity therewith. WIS. STAT. § 904.02(2)(a). We will not disturb a court's decision to admit or exclude other acts evidence unless the court erroneously exercises its discretion. *See State v. Jackson*, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791. A court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record. *Id.* We must be mindful that "the circuit court's decisions to admit or exclude evidence are entitled

to great deference." *Id.*, ¶45 (citation omitted). If, however, a court fails to explain a specific part of its ruling, we will independently review the record to determine whether it provides an appropriate basis for the court's decision. *See State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399.

¶16 Circuit courts engage in a three-step analysis to determine the admissibility of other acts evidence. *Sullivan*, 216 Wis. 2d at 771-73. The party seeking admission of the other acts evidence bears the burden of establishing that the first two prongs of the *Sullivan* test are met by a preponderance of the evidence. *Marinez*, 331 Wis. 2d 568, ¶19.

¶17 The first inquiry is whether the other acts evidence is offered for an acceptable purpose under WIS. STAT. § 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Sullivan*, 216 Wis. 2d at 772-73. As long as the other acts evidence's proponent identifies one acceptable purpose for the evidence's admission that is not related to the forbidden character inference, the first step is satisfied. *State v. Payano*, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832.

¶18 Based upon the record, we conclude the circuit court did not erroneously exercise its discretion in determining there was a proper purpose to admit the other acts under the first prong of *Sullivan*. In its motion, the State offered multiple theories upon which to admit the other acts. The court admitted acts one and four for the purpose of showing Vanremortel's "system of criminal activity," which is a proper purpose for the court to admit the evidence. Our supreme court has broadly defined "plan" to include "a system of criminal activity" comprised of multiple acts of a similar nature. *See State v. Friedrich*, 135 Wis. 2d 1, 24, 398 N.W.2d 763 (1987). We agree with the court that acts one

and four are similar enough to Vanremortel's charged conduct to demonstrate a "system of criminal activity," in that those other acts show that Vanremortel "has issue[s] with law enforcement officers.… He follows them whether those are officers he's had prior contact with or not."

¶19    The circuit court admitted act two for the purpose of showing the context of Vanremortel's "alleged criminal behavior in this matter" by following Greg's wife.  Other acts evidence used to provide context or to "complete the story" is also an acceptable purpose.  *See **Payano***, 320 Wis. 2d 348, ¶¶64-66; 7 Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 404.708 (4th ed. 2018).  To satisfy its burden of proof, the State was required to prove at trial that Vanremortel: (1) engaged in boisterous or otherwise disorderly conduct; and (2) tended to cause or provoke a disturbance under the circumstances as they then existed.  *See* WIS—JI CRIMINAL 1900 (2018).  We agree with the court that act two provided context to the incident that occurred with S.Z., as act two explained why S.Z., "under the circumstances as they then existed," was so disturbed by Vanremortel's conduct.  *See **id**.*

¶20    The second inquiry is whether the other acts evidence is relevant.  ***Sullivan***, 216 Wis. 2d at 772.  In assessing relevance, a circuit court must consider first whether the other act relates to a fact or proposition that is of consequence to the determination of the action.  *Id.*  The court then assesses whether the other act has a tendency to make a consequential fact or proposition more probable or less probable than it would be without the evidence.  *Id.*

¶21    The circuit court properly exercised its discretion on the second prong of ***Sullivan*** because the other acts were relevant.  Vanremortel argues the other acts were irrelevant because "it did not address whether (a) Vanremortel's

conduct was disorderly, although it was surely boisterous, or (b) it tended to provoke a disturbance within the circumstances presented and described by S.Z." We disagree.

¶22    One element the State needed to prove was that Vanremortel's conduct, "under the circumstances as they then existed, tended to cause or provoke a disturbance." *See* WIS—JI CRIMINAL 1900 (2018). We agree with the State that the other acts concerning Vanremortel's prior interactions with active and inactive law enforcement officers were relevant to the jury issue of why S.Z. felt terrified by his actions and, thus, why his actions should be considered disorderly. As the State astutely explains, "Absent the other acts, S.Z.'s reaction would have been much more difficult to explain and the jury would have had a much more difficult time understanding why [Vanremortel]'s actions were disorderly." Additionally, the other acts were relevant to whether Vanremortel's conduct "tended to cause or provoke a disturbance." *See id.* The other acts highlight Vanremortel's history of placing himself not only in situations where conflict with law enforcement, or those associated with law enforcement, was highly probable, but that he initiates confrontations with those individuals.

¶23    The other acts here also make a consequential fact more probable because an element of disorderly conduct required the jury to assess whether Vanremortel's conduct caused or provoked a disturbance "under the circumstances as they then existed." *See id.* "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." ***State v. Davidson***, 2000 WI 91, ¶67, 236 Wis. 2d 537, 613 N.W.2d 606. The similarities of the other acts with that of Vanremortel's charged conduct helped explain both why Vanremortel left his vehicle on two occasions to shout at S.Z., and why S.Z. felt particularly threatened by his actions.

10

¶24   The third and final inquiry is whether the other acts evidence's probative value outweighs the danger of unfair prejudice. *Sullivan*, 216 Wis. 2d at 772.   When reviewing the circuit court's balancing of probative value and prejudicial effect, "we assess the other-acts referred to in the proffered testimony for their nearness in time, place, and circumstance to the alleged crime or element sought to be proved." *Friedrich*, 135 Wis. 2d at 23.   The burden at this stage shifts to the opposing party to establish that the probative values of the other acts are substantially outweighed by the risk or danger of unfair prejudice. *Marinez*, 331 Wis. 2d 568, ¶19.

¶25   Vanremortel failed in his burden to prove the other acts' danger of unfair prejudice substantially outweighs their probative values.   As discussed above, the other acts were highly probative of an element the State was required to prove at trial—that his conduct tended to cause or provoke a disturbance.   Further, the circuit court gave the jury a cautionary instruction that the other acts should not be used to conclude that Vanremortel is a bad person and is guilty for that reason.   "[A] cautionary instruction, even if not tailored to the case, can go 'far to cure any adverse effect attendant with the admission of the other acts evidence.'" *Sullivan*, 216 Wis. 2d at 791 (citation and alteration omitted).   Jurors are presumed to follow such cautionary instructions.   *See* *State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992).

¶26   We disagree with Vanremortel that the circuit court's cautionary instruction was too broad, diminishing its significance.   The court tailored the instruction to the facts of the case and explained to the jury that there had been evidence presented regarding Vanremortel's conduct for which he was not on trial. Vanremortel's argument is unpersuasive because it is conclusory and fails to explain why, for the cautionary instruction not to be overbroad, the instruction was

required to distinguish between Vanremortel's other acts and his conduct in the incident with S.Z.

¶27 In all, the circuit court did not erroneously exercise its discretion when it admitted the other acts evidence because it reviewed the relevant facts, applied a proper standard of law, and reached a reasonable conclusion using a rational process. *See Payano*, 320 Wis. 2d 348, ¶41.

¶28 Vanremortel generally argues the circuit court erroneously exercised its discretion because it "failed to examine the relevant facts." He also complains about the court's failure to "carefully" apply the *Sullivan* analysis to the admitted other acts and for not making a better record of its decision explaining why the other acts were admitted.

¶29 To the extent Vanremortel complains that the circuit court failed to properly analyze the evidence, his argument is greatly diminished because, as the State contends, he declined to argue against the other acts' admissibility at the motion hearing. The court provided brief explanations of its reasons to admit the three other acts, while providing a more in-depth explanation of its decision not to admit act three. The lack of detailed reasoning regarding the three sets of other acts evidence that were admitted is largely due to Vanremortel's own making by failing to argue against admission.[5] Moreover, we are permitted to independently review the record to determine whether it provides an appropriate basis for the court's decision. *See Marinez*, 331 Wis. 2d 568, ¶17. For the reasons previously discussed, the record demonstrates that the court reached a reasonable conclusion

---

[5] Vanremortel does not claim ineffective assistance of his trial counsel on appeal.

using a rational process and the proper standard of law. Therefore, Vanremortel has not shown how the court erroneously exercised its discretion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.