COURT OF APPEALS
DECISION
DATED AND FILED

September 27, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP577-CR**

Cir. Ct. No. **2019CF351**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ROGER G. LATIMER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Racine County: ROBERT S. REPISCHAK, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Roger G. Latimer appeals from a judgment convicting him of stalking, as a repeater, under WIS. STAT. §§ 940.32(2) and 939.62(1)(b) (2021-22).[1] Latimer argues on appeal that he was unfairly prejudiced by a trial court ruling allowing evidence related to his previous conviction for possession of child pornography. We conclude that the trial court did not erroneously exercise its discretion in admitting this evidence as panorama evidence. We affirm.

## I. BACKGROUND

¶2     The pertinent facts are not in dispute. Latimer and "Debbie" were married and lived together in Illinois, along with Debbie's young son.[2] While living in Illinois, Latimer was convicted of possession of child pornography based on evidence found on Latimer's phone during the investigation of a domestic abuse charge. Although Latimer was not convicted of any charges involving Debbie's son, police also found photos of Debbie's then-three-year-old son's penis on Latimer's phone. Debbie testified against Latimer at his bench trial in Illinois, and Latimer ended up pleading guilty and was sentenced to prison. Illinois police encouraged Debbie to take her son and move back to their home in Wisconsin.

¶3     It was after Latimer's release from prison that the contacts leading to his stalking conviction began. From July 2018 to March 2019, the Racine Police Department responded to several calls from Debbie and her roommate "Josh" complaining about Latimer's repeated presence at or near Debbie's home. During various police calls, Debbie and Josh advised that Latimer was in the area, "outside

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] We refer to the victims using pseudonyms to protect their privacy.

the residence," "trying to get into the house[,]" and "in front of her house and threatening her and her family." Debbie and Josh told police that Latimer's presence near their home scared them, and they wanted Latimer removed from the area.

¶4     The final police call to Debbie's residence during the period relevant to this appeal came from Latimer himself. Latimer reported that Debbie had stolen his grill and said he wanted to go to Debbie's house to retrieve his grill. One of the officers who responded to Latimer's call later testified that Latimer became "a little erratic" about the grill. Latimer also asked police to question Debbie about her marital status and reportedly attempted to approach the door of Debbie's house with police to confront her about the grill. The officer testified that Latimer behaved in an "abrasive[]" and "argumentative" manner throughout the interaction.

¶5     During the investigation of the incident involving the grill, Debbie informed police that "she did not want to have any contact with [Latimer] for fear for herself and her child." "She explained that there [was] a previous crime issue with [Latimer] and [Debbie's son,]" which caused her to feel unsafe when Latimer was near.

¶6     Latimer was subsequently charged with two counts of stalking. Before trial, the State moved to admit evidence related to Latimer's Illinois conviction for possession of child pornography. The State argued that the evidence was not "other acts evidence" and instead was "direct evidence of the elements of the [stalking] crime itself." Without providing the entire context of Latimer's history with Debbie, the State contended, the jury would not be able to determine whether it was reasonable for Debbie or Josh to experience emotional distress and fear as a result of Latimer's behavior or whether Latimer knew or should have known that his behavior would cause Debbie or Josh emotional distress and fear.

3

Although admittedly prejudicial to Latimer, the State argued that it was not *unfairly* prejudicial.

¶7     The trial court held a hearing on the State's motion, after which it ruled that the evidence would be admissible at trial.  The morning of the trial, defense counsel sought clarification of the court's earlier ruling.  After re-examining the transcript of the prior hearing, re-reading the proposed cautionary jury instructions, and hearing additional argument from the parties, the court reaffirmed its ruling to allow the evidence to come in at trial.  The court cited to several cases in support of its ruling and determined that the evidence "is prejudicial" but not unfairly prejudicial because it demonstrates "why [Debbie] is concerned about having contact with [the defendant]."

¶8     When the evidence of Latimer's prior conviction came up at trial, the trial court instructed the jury to "consider it only on the issue of context and background."  The court cautioned the jury that it "may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant [acted] in conformity with that character or trait with respect to the offense charged in this case."  The court reiterated that evidence regarding the conviction was presented to "provide a more complete presentation of the evidence relating to the events charged."  The court concluded the instruction by admonishing the jury to use the evidence for only the described purpose and that "[i]t is not to be used to conclude that the defendant is a bad person ... and ... for that reason is guilty of the offense charged."  The court repeated these cautionary instructions prior to jury deliberations.

¶9     The jury convicted Latimer of stalking Debbie but found him not guilty of stalking Josh.  Latimer appeals.

## II. DISCUSSION

¶10 "The question of admissibility of evidence generally lies within the trial court's discretion." *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515. A trial court properly exercises its discretion if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process[,] and reached a conclusion that a reasonable judge could reach." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399 (quoted source omitted).

¶11 WISCONSIN STAT. § 904.04(2) provides that evidence of other crimes, wrongs, or acts is admissible to prove intent but not admissible to prove the character of an individual in an effort to show action in conformity therewith. If the evidence is relevant and admissible under § 904.04(2), the trial court must then decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, pursuant to WIS. STAT. § 904.03. *State v. Kuntz*, 160 Wis. 2d 722, 746, 467 N.W.2d 531 (1991). Section 904.03 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶12 This court has previously recognized that "'simply because an act can be factually classified as different—in time, place and, perhaps, manner than the act complained of—that different act is not necessarily other acts evidence in the eyes of the law.'" *Dukes*, 303 Wis. 2d 208, ¶28 (citation omitted). To that end, evidence is not considered to be other acts evidence "if it is part of the panorama of evidence

needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." *Id.*

¶13 Latimer argues that the trial court erroneously exercised its discretion in allowing the evidence related to his child pornography conviction to come in at trial because it was "unfairly prejudicial" and confused the issues for the jury. The State argues that the evidence, though prejudicial, was relevant and probative panorama evidence that went directly to an element of the crimes that the State needed to prove. We agree with the State.

¶14 Evidence that police found illegal photos on Latimer's phone when investigating an alleged domestic abuse incident involving Latimer and Debbie, that Debbie testified against Latimer at his Illinois trial, and that police instructed Debbie to move away from Latimer while he was incarcerated was all "part of the panorama of evidence needed to completely describe the crime that occurred and is ... inextricably intertwined with the crime." *Id.* "The evidence involved the relationship between the principal actors," *State v. Jensen*, 2011 WI App 3, ¶85, 331 Wis. 2d 440, 794 N.W.2d 482, and explained the context in which Latimer's acts caused Debbie to suffer emotional distress and to fear for her own safety or that of members of her household.

¶15 We conclude that the testimony was relevant and not substantially and unfairly prejudicial. Evidence that is relevant is generally admissible at trial. *State v. Richardson*, 210 Wis. 2d 694, 705, 563 N.W.2d 899 (1997); *see also* WIS. STAT. § 904.02. "Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable." *Richardson*, 210 Wis. 2d at 705; *see also* WIS. STAT. § 904.01.

¶16    In order to prove that Latimer was guilty of stalking, the State needed to prove that the acts Latimer engaged in "would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household." WIS. STAT. § 940.32(2)(a). The State also needed to prove that Latimer knew or should have known "that at least one of the acts … [would] cause [Debbie or Josh] to suffer serious emotional distress or place [them] in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household" and that the acts in fact had that effect on them. *See* § 940.32(2)(b) and (c).

¶17    When Latimer argued to the trial court that the evidence of his previous conviction was unfairly prejudicial, the State responded that Latimer's history with Debbie was necessary to prove elements of the stalking charges; namely, whether it was reasonable for Debbie or Josh to experience distress and fear as a result of Latimer's behavior and whether Latimer knew or should have known that his behavior would cause them emotional distress and fear. The evidence put into context the history of Latimer's relationship with Debbie and her family in a way that comported with the definition of stalking. Debbie's testimony made it more probable that Latimer's conduct created more than merely a risk of emotional distress and fear and that it did, in fact, evoke such emotions from her.

¶18    Thus, we conclude that the trial court did not erroneously exercise its discretion when it admitted the evidence. Debbie's testimony was not so "inflammatory" as to require its exclusion. *See* WIS. STAT. § 904.03 (providing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"); *see also **State v. Payano***, 2009 WI 86, ¶80, 320 Wis. 2d 348, 768 N.W.2d 832 (noting that "[t]he term 'substantially'

indicates that *if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted*" (citation omitted)).[3] Moreover, the court twice instructed the jury on the proper consideration of the evidence related to the previous conviction, thereby curing any potential "danger of unfair prejudice or misleading the jury[.]" *See **State v. Grande***, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992)

¶19 All evidence is subject to relevancy and prejudice analyses. WIS. STAT. §§ 904.01, 904.03. Here, the trial court assessed the relevancy and prejudicial effect of this evidence when it decided to admit this evidence. The court did not erroneously exercise its discretion in admitting the panorama evidence. *See **Jensen***, 331 Wis. 2d 440, ¶75.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] In his Reply brief, Latimer attempts to distinguish from the evidence at issue here the evidence in ***State v. Payano***, 2009 WI 86, 320 Wis. 2d 348, 768 N.W.2d 832, and other panorama-evidence cases cited by the State in support of its arguments. Latimer argues that in each of the cited cases, "[t]here was no evidence of any intervening factors that would have caused the observations by that witness to have become irrelevant or not probative[,]" whereas in this case, there was a "break" between when Debbie learned about the illegal photos on Latimer's phone and when she ended their relationship.

For reasons discussed above, the evidence was relevant to provide context for the jury, and any argument that such testimony is not probative goes to the weight of that evidence, not its admissibility. As such, it was for the jury to determine the probative nature of the evidence of the history of Debbie's relationship with Latimer. The jury heard testimony regarding the length of time between Debbie learning about the photos and the end of the relationship, and it determined that Latimer's later acts at and near Debbie's home caused her emotional distress and fear despite evidence of any "break" or intervening factors. We will not set aside the trial court's factual findings unless clearly erroneous, and we give due regard to the opportunity of the factfinder to judge witness credibility. WIS. STAT. § 805.17(2).